IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOMAS J. LINCOLN,

        Plaintiff,

vs.                                          CIVIL NO.  02-739 LH/LFG-ACE

HARTFORD FIRE
INSURANCE COMPANY

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on a telephonic conference hearing to resolve various discovery disputes.[1]

The primary dispute concerns the place where Defendant, Hartford Fire Insurance Company ("Hartford") should produce documents. Hartford gathered documents and has them available for inspection and copying at its corporate headquarters. This is consistent with a corporation's responsibility. Indeed, the general rule is that business records are examined at the place where they are kept, at least when the documents are voluminous in nature and their production would pose inconvenience. Mid-America Facilities, Inc. v. Argonaut Ins. Co., 78 F.R.D. 497, 499 (D. Wis. 1978): "unless plaintiffs [the parties requesting production] can show that the burden imposed on them in going to California [the location where the corporate records are kept] will substantially outweigh the burden on the defendant in bringing the documents to Milwaukee, defendant will have sufficiently complied with Rule 34 if it makes the documents available in California."

---

[1]In accord with the cost-savings provisions of the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.*, the Court seeks to intervene in discovery disputes at an early stage so as to expedite the discovery process and reduce the costs of litigation.

Thus, under the general rules concerning production, Hartford was correct in simply making its documents available for inspection and copying at its headquarters. The general rule, however, may be modified when production would not be burdensome or where the documents are not so voluminous as to cause significant inconvenience. <u>Compagnie des Bauxites de Guinea v. Insurance Co. of North America</u>, 651 F.2d 877 (3d Cir. 1981).

Such is the case here. This is not a situation where there are banker boxes full of records that need to be inspected and selected documents therefrom copied. Rather, Hartford identified only one thousand or so documents that are responsive to Plaintiff's request, and Plaintiff's counsel has no need of inspecting these documents, but has already determined that Plaintiff wishes a copy of each of the documents identified. Thus, it serves no useful purpose and would be an unwise expenditure of funds to require Plaintiff's counsel to fly to Hartford's headquarters only to announce there what has already been announced here, that is, that the thousand documents need to be copied.

The Court finds that cause exists to modify a defendant's production obligations under the general rule, and will order that Hartford photocopy and transport the documents which Hartford previously identified. The photocopying and transportation expenses are to be borne by the Plaintiff. In addition, should Hartford demonstrate that it incurred other reasonable costs with respect to expenses for production of documents so as to accommodate Plaintiff's request, the Court may tax as costs the necessary and reasonable expenses incurred. *See e.g.*, <u>Harrington v. Texaco, Inc.</u>, 339 F.2d 814, 822 (5th Cir. 1964). However, if the Court determines that the request for costs (other than the copying and transportation charged) is unreasonable or excessive, it may deny the request to recover such costs. <u>United States Indus., Inc. v. Touche Ross & Co.</u>, 854 F.2d 1223, 1245 (10th Cir. 1988).

The next two disputes concern interrogatories. In Interrogatory No. 8, Plaintiff sought to compel Hartford to produce information concerning changed policies subsequent to Plaintiff's termination of employment. Plaintiff argues, "[T]his information is relevant to show that the procedures for terminating employees was [sic] either changed or enforced after Plaintiff was terminated, which is relevant for the purpose of showing that Plaintiff's termination was not in accordance with policy and/or procedure or that corrective measures were taken to avoid improper terminations." (Plaintiff's December 2, 2002 letter request for telephonic conference).

Essentially, Plaintiff is seeking information on what is commonly known as a subsequent remedial measure. The rules of evidence provide:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407.

There is a public policy reason to exclude discovery and admissibility of such evidence. Indeed, the 1972 Advisory Committee Commentaries to Rule 407 provides:

> The other, and more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety. The courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees, and the language of the present rule is broad enough to encompass them all. *See* Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L. Rev., 574, 590 (1956).

3

The same public policy that prevents admissibility of this information should prevent discovery. If a company refrains from modifying allegedly problematic policies or procedures out of a concern that the mere discovery of those changes would be used against it, then inappropriate policies might not be modified. Here, Plaintiff has not demonstrated the need for this information to come within any of the exceptions in Fed. R. Evid. 407, and the Court perceives none. Thus, the Court determines that post-incident conduct is not relevant and its production would not lead to the discovery of relevant, admissible evidence. Accordingly, the Court sustains Hartford's objection.

The next discovery dispute concerns Interrogatory No. 10 and Hartford's cost of benefits made available to Plaintiff. Plaintiff requested information on the cost to Hartford of the benefits given to him and he contends that Hartford's cost is relevant to his damage claim. In response, Hartford demonstrates that it provided Plaintiff with information concerning the benefits given to Plaintiff as follows:

> Mr. Lincoln enrolled for benefits for himself and his two sons, elected the Blue Cross PPO Medical Plan with a $1,000 deductible. He elected the Delta Premier Dental Plan with a $50.00 deductible. He was provided with basic life insurance of $25,000 and optional AD&D at 4x his pay ($1,800,000). The company also provided short-term and long-term disability benefits, which Mr. Lincoln received following the termination of his employment. During the year 2001, Mr. Lincoln was eligible for 7 personal days, 7 vacation days and 4 flex care days. Mr. Lincoln participated in the company's Investment and Savings Plan. Mr. Lincoln further became eligible to participate in the company's Retirement Plan upon his completion of one year of service but was not vested or entitled to any benefits thereunder because he had not completed five years of service with the company. Mr. Lincoln was also provided with a company car.

The Court determines that this response is sufficient and Hartford has no obligation to explain to Plaintiff what these benefits cost Hartford. The relevant information necessary for Plaintiff's

damage claim is identification of the benefits provided him and the value of the benefit to Plaintiff, not the cost of the benefit to Hartford.  The Court sustains Hartford's objection.

Finally, the Court turns to Plaintiff's concern that Hartford's privilege index is inadequate.  The Court reviewed Defendant's Privilege Log provided and agrees with Plaintiff.  The index fails to comport with the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).  In a prior ruling on this same type of issue, Chief Judge James A. Parker determined that a party must provide at least enough helpful information to enable another party or a judge to make a determination about the privileged nature of the communication at issue.  Sanchez v. KPMG Peat Marwick, No. CIV 93-0406 (August 9, 1994).  Judge Parker's comments are in accord with the requirements of Vaughn v. Rosen.  Hartford shall have ten days to submit a revised privilege log that would identify with some particularity the specific document withheld, identify the date of production, by whom it was produced, to whom it was distributed, and the specific nature of the claimed privilege.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge